[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant Daniel Greer is the owner as trustee of a three-family dwelling at 777 Elm Street, New Haven. The plaintiff ("Water Company") has petitioned for the appointment of a receiver of rents for the property pursuant to Conn. Gen. Stat.16-262f, claiming that the defendant is in default of payment of water bills for the property. The Water Company claims a current balance due of $1009.05 as of March 15, 1991.
Under Conn. Gen. Stat. 16-262f, the purpose of the hearing on the petition for a receiver is to determine whether there is a debt owed by the property owner and if so, the amount of the debt. If a debt is owed, the Water Company is entitled to the appointment of a receiver.
The dispute between the parties arises out of water consumption readings for the property from June, 1988 through CT Page 5026 June, 1989. Mr. Greer testified, and the Water Company did not dispute, that he has paid all his water bills in a timely fashion except for the bills in dispute. The defendant disputes the bills in question because they are based on water consumption readings which were significantly higher than the norm for the property. The Water Company contends that the readings are valid. The defendant claims that the readings must be attributable to a faulty meter.
The quarterly readings for the property prior to the reading on June 14, 1988 showed consumption ranging from 2400 cubic feet to 4000 cubic feet. The disputed readings were as follows:
 June 14, 1988 9500 cubic feet September 14, 1988 18,600 cubic feet December 15, 1988 44,500 cubic feet March 17, 1989 9300 cubic feet June 16, 1989 7900 cubic feet
Most of the testimony at trial addressed the December 15, 1988 reading of 44,500 cubic feet, which represents the usage of 330, 750 gallons of water in a 90-day period.
The defendant's expert, a licensed architect, testified that the design standard for water consumption for a three-family dwelling occupied by eight people, as this one was, is the equivalent of 9600 cubic feet for a 90 day period. The plaintiff's reading of 44,500 cubic feet for the 90-day period ending December 15, 1988 was "simply outrageous," he testified. To illustrate the quantity of water at issue, he testified that a garden hose would have to run continuously, at 5 gallons per minute for 45 days to consume that amount of water. An alternative example he offered is that the toilets and/or sinks in the property would have to leak a total of 2.6 gallons per minute all day long for 90 days to consume 330, 750 gallons of water.
The defendant asks the court to infer that the meter was faulty because of this extraordinary reading and the other high readings. There was no direct evidence of any deficiency in the meter. (The defendant also relies on the fact that the sewer usage bills for the property remained virtually constant during the quarters in question. Although there was testimony that sewer use charges are generally equal to 80% of water consumption, none of the witnesses knew whether the property had a sewer use meter. Therefore, the court places little weight on this evidence, not knowing whether the sewer use bills are simply estimates or based on actual metered readings.)
The plaintiff contends that the meter readings were accurate CT Page 5027 and that dripping faucets and/or running or flushing toilets can consume the amount of water shown on the readings. It is not disputed that there were some leaks and other plumbing problems at the property. In November, 1988, plumbing repairs were made to a second floor toilet and to a leaky kitchen faucet on the first floor. An inspection of the property by the Water Company on November 18, 1989, after some plumbing repairs had been made, revealed that a bathroom sink on the second floor was dripping, the third floor kitchen faucet was dripping and that the first floor toilet was running and was using a high water level.
In December, 1988, the defendant's property manager sent copies of the plumbing bills to the Water Company and asked for a waste adjustment credit which was later granted, a credit of $278.83 against the December 1988 bill of $607.02. In his letter, the property manager stated, "We recently discovered considerable water waste at 777-779 Elm Street. According to both your inspector and our plumber, the waste was due almost entirely to the second floor toilet, which was constantly flushing." (Emphasis added.)
The plaintiff's expert testified that a flushing toilet consumes approximately three gallons of water per minute and that a "constantly flushing" toilet would consume 577 cubic feet of water per day, a total of 51,930 cubic feet of water over a 90 day period. (The December, 1988 reading for the property showed 44,500 cubic feet consumed.)
It is clear that there were a number of leaky faucets and running and/or constantly flushing toilets at this three-family property until November, 1988, when plumbing repairs were made. Defendant's own expert testified that leaks totalling 2.6 gallons per minute would consume the water shown on the meter reading taken on December 15, 1988. Although 2.6 gallons per minute seems to be a very large quantity of water, the defendant's property manager admitted that one of the toilets was "constantly flushing." The undisputed testimony was that this would consume 3 gallons of water per minute. In addition to the toilet, numerous faucets were leaking.
The most persuasive fact supporting the plaintiff's claim is that water consumption decreased significantly with the very first full quarterly reading after the plumbing repairs were made. The March, 1989 reading showed consumption of 9300 cubic feet, approximately 1/5th of the December, 1988 reading of 44,500 cubic feet consumed. The defendant's contention that the meter was faulty in December, 1988 fails to explain why the meter readings decreased in March, 1989 and decreased again in June, 1989. No evidence was offered that the meter was adjusted or repaired. CT Page 5028
The court finds that the meter readings, although unusually high, were accurate. There is a sum due and owing from the defendant to the plaintiff. The Application for Appointment of a Receiver of Rents is granted subject to the following two conditions:
1. The balance of $1009.05 claimed to be due is comprised in part of interest on the disputed bills rendered from June, 1988 through June, 1989. In light of the legitimate dispute with respect to the amount of those bills, the court finds that interest should not have been charged. Within ten days from the filing of this decision, the plaintiff shall file with the court, with a copy to defendant's counsel, an affidavit setting forth the balance due and owing the plaintiff as of March 15, 1991 after giving the defendant credit for all interest charged on the disputed bills.
2. The defendant has represented to the court that he will promptly pay the plaintiff the amount of any debt found due by the court in lieu of having the receiver appointed. Therefore, this decision granting the appointment of a receiver shall be stayed for twenty days, to provide ten days for plaintiff to recalculate the debt without interest and ten additional days for defendant to pay plaintiff the debt plus costs and attorneys' fees.
Conn. Gen. Stat. 16-262f requires that the defendant pay reasonable attorneys' fees and costs incurred by the plaintiff. The court finds that plaintiff's reasonable attorneys' fees for this action are $200.00, plus costs of $157.20.
Vertefeuille, Judge.